## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TRACIE DUNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action |
| | ) | No. 15-cv-13390 |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

August 19, 2016

Saris, C.J.

### INTRODUCTION

Plaintiff Tracie Dunn seeks review of the decision denying her claim for Social Security benefits, arguing that the Administrative Law Judge (ALJ) failed to consider properly the severity of her migraines. The Court **ALLOWS** Plaintiff's motion to remand and reconsider the decision of the Commissioner (Docket No. 19) and **DENIES** Defendant's motion to affirm the decision of the Commissioner (Docket No. 23).

### FACTUAL BACKGROUND

Plaintiff Tracie Dunn applied for both Social Security Disability and Supplemental Security Income benefits on July 13,

1

2012, alleging she was disabled by severe depression and severe migraines. In both applications, Dunn asserts that her disability began on February 1, 2012. Dunn was forty-two years old when the ALJ denied her application on May 13, 2014. Dunn worked most recently as a cashier, but in the past has also served as an assembly worker and an administrative assistant. Dunn did not graduate from high school, but received her GED. She was sometimes homeless.

## I.   Physical Health Conditions

Plaintiff Dunn's primary care physician is Dr. Paul George, M.D., of the Family Care Center (FCC). R. 39. On January 13, 2012, Plaintiff began seeing Dr. George primarily for migraines, depression, and right shoulder pain. R. 283-86.

### A. Migraine Headaches

Plaintiff has a history of chronic migraines, and has consistently complained of migraine headaches to her treating physicians, as documented throughout her medical record.

Plaintiff's initial visit with Dr. George was on January 13, 2012. R. 283-86. During this visit, Plaintiff complained of headaches that could occur daily and were associated with nausea. R. 284. The headaches were relieved by Plaintiff going into a darkened room and placing a damp cloth over her forehead. Id. She said that medications had not provided much relief, including Imitrex, Fioricet, and Topamax. Id.

On January 27, 2012, Plaintiff had a follow-up visit with Dr. George regarding her migraines, shoulder pain, and depression. R. 280-82. Plaintiff reported that despite a prescription for Imitrex, she had daily migraines. R. 281. Dr. George prescribed Lamictal for migraine prophylaxis. R. 281-82. There were no abnormalities present during the brief neurological physical exam. R. 281.

On June 12, 2012, Dunn had an acute care visit to the FCC for migraines. R. 269. Dunn had been experiencing a headache for several days. Id. Dunn stated this headache felt like her typical migraine, but had lasted longer than usual. Id. Dunn was nauseous and had vomited due to the migraine. Id. She said her migraine pain was an eight out of ten. Id. There were no neurological abnormalities present during the examination. R. 270. Dunn said the migraine was not responding to Imitrex or cold packs. R. 269. Treatment notes from this visit state that Plaintiff has a history of migraines. Id.

On June 19, 2012, after hitting her head on a sink, Plaintiff visited the emergency room at Memorial Hospital of Rhode Island for a head injury and resulting dizziness. R. 248-57. A CT scan of Dunn's brain conducted that day was negative, showing no acute findings. R. 248, 255, 288. The neurological examination was normal. R. 255. Plaintiff's migraine symptoms became worse following this accident, but the headaches were

relieved by medication. R. 249, 254. Plaintiff also noted her history of migraines. R. 254. Plaintiff was diagnosed with a likely concussion and post-concussive syndrome. R. 255. During a follow-up visit for this injury on June 27, 2012, where Plaintiff's chief complaint was dizziness, treatment notes again acknowledge Plaintiff's history of migraines. R. 248-50.

On July 20, 2012, during a follow-up visit with Dr. George, Dunn complained of both migraines and shoulder pain. R. 266-68. Dunn stated she continued to have migraines. R. 266. She stated Lamictal was not helping. Id. There were no abnormalities found during the neurological exam. R. 267.

On July 25, 2012, Dunn had an acute care visit to the FCC for migraines. R. 263-65. Dunn's chief complaint was migraines and that she needed medicine for them. R. 263. Dunn noted to the treating physician that she was having migraines at least three times per week. Id. Dunn stated the migraine pain was "like getting stabbed," and that she "needs to lay down, cover [her] face with [a] cold cloth," and be in darkness. Id. Treatment notes acknowledge Plaintiff's history of migraines. R. 264. No abnormalities were found during a neurological exam. Id. Plaintiff received a refill of Fioricet, which Plaintiff stated was working to relieve her headaches. R. 263-65.

On April 29, 2013, Dunn's chief complaint to Dr. George involved migraines. R. 333. Dunn stated that during a migraine

two weeks prior she had seen an aura after vomiting and had fallen and likely hit her head. Id. No abnormalities were found upon a neurological exam. R. 334.

During a visit with Dr. George on June 21, 2013, Plaintiff noted her migraines were worsening with photophobia (discomfort in the eyes due to light) and phonophobia (aversion to loud sounds), and she experienced nausea and vomiting from them. R. 328. Dr. George again prescribed Fioricet for the migraines. R. 329-30.

On September 26, 2013, during an urgent care visit due to an assault, Plaintiff stated she was taking Topamax for migraines. R. 359, 362. Plaintiff's neurological examination during this visit was "unremarkable." R. 360. Doctors also performed a CT scan, which was mostly normal. R. 368.

Finally, on February 21, 2014, during a visit to the FCC, Dunn told Dr. George she was having migraines two or three times per week. R. 340. Dunn stated that she used to have more migraines per week, but they had improved. Id. She was prescribed Fioricet. R. 340-41. Dunn also had success on the medication Topamax but could not afford this preventive medication. R. 341. Dr. George planned to put her back on Topamax once she secured insurance. Id.

### B. Right Shoulder Pain

Plaintiff complains of right shoulder pain throughout the medical record. See, e.g., R. 266, 273. On January 16, 2012, doctors took an x-ray and found Dunn's right shoulder to be normal. R. 291; see R. 55. On May 31, 2012, Dunn returned to the FCC for a follow-up visit on her chronic right shoulder pain. R. 272-77. On July 20, 2012, Dr. George wrote that Dunn "continues to have right shoulder pain." R. 266. During this visit, Dr. George noted that Dunn attended physical therapy for this pain, and there seemed to be some improvement. Id. A week later, an MRI scan was taken of the right shoulder. R. 287. The MRI found no rotator cuff tear, but "thickening and tendinopathy of the supraspinatus and infraspinatus tendons."[1] Id.; see R. 55. On February 21, 2014, an EMG showed carpal tunnel syndrome in the right arm. R. 340.

### C. Evaluations

Dr. George, Dunn's primary treating physician, did not testify at the ALJ hearing, but did complete a Headaches Medical Source Statement. R. 369-72. In this form, Dr. George indicated that the intensity of Dunn's headaches was "moderate – inhibits

---

[1] Tendinopathy refers to a tendon injury, including inflammation and microtears. *Tendinopathy*, WEB MD, http://www.webmd.com/first-aid/tc/tendon-injury-tendinopathy-topic-overview (last updated June 4, 2015). The supraspinatus and infraspinatus are two of the four rotator cuff muscles. 43 Am. Jur. 3d Proof of Facts 201 Shoulder Injuries (2016).

but does not wholly prevent usual activity." R. 369. He stated
Dunn's headaches occur three to four times per week, and thus
that she would have sixteen to twenty per month. Id. Dr. George
also indicated that Dunn would be precluded from performing
basic work activities during a headache, would need a break
while she had a headache, and would be 25% or more off-task due
to her migraine symptoms. R. 371. However, Dr. George did note
that medication improved Dunn's headaches. R. 370. Further, Dr.
George stated that Dunn was capable of low-stress work, and that
he and Dunn discussed this possibility. R. 370-71. Dr. George
concluded that Dunn's headaches would cause her to be absent
more than four days per month from work. R. 371.

     Dr. George also completed a Physical Capacity Evaluation.
R. 376. In his evaluation, Dr. George estimated that in an
eight-hour workday, Dunn could sit three to four hours per day,
stand two to three hours per day, walk two to three hours per
day, and sit and/or stand a total of two to three hours per day.
Id. Dr. George also opined that Dunn may never be exposed to
dust, fumes, or gas. Id.

     Dr. George also completed a Pain Questionnaire regarding
Dunn's shoulder and noted Dunn suffered moderately severe pain
due to her shoulder. R. 375. Dr. George concluded that Dunn's
shoulder pain likely would cause her to be absent more than four
days per month from work. Id. Lastly, Dr. George completed a

Supplemental Questionnaire as to Residual Functional Capacity, which indicates psychiatric impairments. R. 373-74. In this questionnaire, Dr. George noted Dunn suffered from "Severe" and "Moderately Severe" impairments. Id.

## II.  **Mental Health Conditions**

When Plaintiff applied for benefits, she alleged she was disabled due to severe migraines as well as severe depression. On numerous occasions, Plaintiff has complained of depression.

Dr. George has confirmed Plaintiff's severe depression. E.g., R. 341, 345. Dunn was referred to Gateway Healthcare for treatment of depression in July 2012. R. 299-325. Dunn stated she hoped to work on mental health issues in order to obtain employment. R. 299. Plaintiff attended two appointments at Gateway and was then discharged when she did not further contact Gateway. R. 299-327.

On December 13, 2013, Dr. George noted that Dunn complained of ongoing panic attacks that occurred a couple of times per week. R. 347.

On January 24, 2014, the chief complaint by Dunn during her visit to the FCC was depression. R. 343. Dunn reported she felt "angry at everything." Id. Dunn's general appearance during this examination was depressed and withdrawn. R. 344.

III. **Consultative Examinations and Assessments**

   A. **Dr. Schwartz**

   On October 31, 2012, psychologist Dr. Wendy Schwartz,
Ph.D., performed a psychological consultative examination as
arranged by Disability Determination Services (DDS) of the
Massachusetts Rehabilitation Commission. R. 292, 298. Dunn
informed Dr. Schwartz she was applying for disability because of
migraines and shoulder pain. R. 292. Dunn reported having
migraines for the past eleven years as well as shoulder pain. R.
294. Dunn also reported depression that had progressively
worsened over the previous seven months. Id. Dunn denied active
suicidal ideation, but noted symptoms of hopelessness,
helplessness, abnormal sleep, and conflict with others. Id. She
further noted, "I would welcome being gone." Id.

   Dr. Schwartz did not find any significant cognitive
abnormalities. See R. 296. On the Mini-Mental Status Exam, Dunn
scored within normal limits. R. 296. Dunn also received a Global
Assessment of Functioning score of fifty-one.[2] See R. 55, 297.

---

[2] The Global Assessment of Functioning (GAF) scale is used for
"reporting a clinician's judgment of the individual's overall
level of functioning and concerns psychological, social, and
occupational functioning." Grant v. Colvin, No. 13-13102, 2015
WL 4945732, at *1 n.2 (D. Mass. Aug. 20, 2015) (citing Am.
Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental
Disorders 32-33 (4th ed., text revision 2000)). "GAF scores in
the 51-60 range indicate 'moderate' symptoms or difficulty in
functioning." Id.

Dr. Schwartz concluded that Dunn presented with symptoms consistent with Major Depressive Disorder, Panic Disorder with Agoraphobia, migraines, and shoulder pain. R. 296. She further noted Dunn had to take breaks due to shoulder pain and migraines. Id. Dr. Schwartz stated that Dunn has "a consistent work history and last worked in October 2012[,] leaving mainly due to her migraines and shoulder pain." Id. She further concluded that "[o]ccupationally, [Dunn's] ability to respond appropriately to customary work pressures, her colleagues, and her supervisors appears to be moderately-to-severely impaired." R. 297. However, Dr. Schwartz added, Dunn "has maintained consistent full-time employment as an adult." Id.

### B. Non-Examining Doctors

In November 2012, state agency physician Dr. Edward Hanna and state agency psychologist Dr. Russell Phillips reviewed Plaintiff's records to assess her functional capacity. R. 55-61. They listed Plaintiff's impairments as "Migraine[,] Disorders of Muscle, Ligament and Fascia[,] Affective Disorders[,] and Anxiety Disorders," and described Plaintiff's migraines as a "non severe" impairment. R. 55. From a mental health standpoint, Dr. Phillips concluded that Plaintiff could "maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods with normal supervision," despite her

allegations of disability "due to depression and migraines." R. 60.

### C. Dr. Gordon

On January 16, 2013, Dr. Clifford Gordon, Ed.D. (Doctor of Education), reviewed Dunn's medical evidence of record. Dr. Gordon determined Dunn's medical impairments and their severity for the DDS as part of the reconsideration of Plaintiff's application for benefits. R. 74-83. Gordon determined that Dunn suffered severe impairments of a muscle disorder, affective disorder, and anxiety disorder. R. 77-78. He concluded Dunn suffered from migraines, but that they were not a severe impairment. R. 77.

Gordon also provided an opinion regarding Plaintiff's Mental Residual Functional Capacity. R. 74-83. Gordon noted that Dunn can attend to basic tasks which are simple, routine, repetitive, and familiar in nature, in two-hour blocks of time. R. 82. He further opined that Dunn can relate adequately with coworkers if contact is minimal and superficial in nature. Id. He stated she would be unable to relate adequately with the general public. Id. Further, Gordon noted Dunn's "main limitations appear to be related to her ongoing irritability but she is able to manage the superficial interactions of daily life." Id.

**D. Dr. Georgy**

On January 23, 2013, Dr. Youssef Georgy, M.D., reviewed the medical evidence of record and issued an opinion regarding Plaintiff's Physical Residual Functional Capacity for the DDS for reconsideration of Plaintiff's benefits. R. 74-83. Dr. Georgy noted that Dunn is limited in her use of her right shoulder. R. 79-80. Dr. Georgy noted that Dunn can perform work with exertional limitations, including postural limitations and environmental restrictions. Id.; see R. 23.

**E. Dr. Turshen**

In May 2013, Dunn had a psychological consultation with Dr. Turshen, M.D., a provider at Dr. Ong's clinic at the FCC. R. 331-32; see R. 328, 334. Dr. Turshen performed a psychiatric evaluation and offered treatment recommendations. R. 331-32. Dunn's chief complaint was ADHD. R. 331. Dunn further reported chronic depressive symptoms, including stating she had a passive wish to be dead. Id. Dr. Turshen also noted that Dunn felt uncomfortable in crowds of more than two or three people. Id. Dr. Turshen diagnosed the plaintiff primarily with ADHD, but also with PTSD and depression. R. 332. Dr. Turshen recommended medication changes, particularly raising Plaintiff's Celexa dose. R. 331-32; see R. 328.

IV.  **<u>Hearing Before the ALJ</u>**

The administrative hearing was held on April 30, 2014, in front of ALJ Jason Mastrangelo. R. 27. Plaintiff was represented by an attorney. R. 27-30.

**A. Dunn's Testimony**

Dunn testified at the hearing before the ALJ as follows: Dunn worked as a cashier for 7-Eleven on a part-time basis between May 3, 2013, and March 26, 2014, working over thirty hours in one week only once. R. 34-35. She was fired for attendance. R. 34.[3] She also worked as a cashier about two to three times per week for Sunoco for two months in 2012. R. 35. That job ended because her cash drawer was short. Id. Before 2012, she performed administrative data-entry work and worked as an assembler. R. 36-37, 185.

Dunn stated she suffers from debilitating migraine headaches three to four times per week, lasting for hours at a time and sometimes for days. R. 41-42. One of these migraines lasted over sixty days. R. 44. Dunn testified that she tries to treat the migraines with "whatever prescription [Dr. George] had prescribed," Tylenol, Icy Hot, or a face cloth. R. 42. This has provided some relief, but her migraines often persisted through the night. Id.

---

[3] Plaintiff testified she thought it was for tardiness as she was late "almost every time." R. 34.

When asked to what extent her migraines interfered with work, Dunn testified that the interference was just to the point of telling people to "shut up" or other outbursts. Id. She did acknowledge that for the migraine that lasted over sixty days, she was afraid to take time off work because she needed the money. R. 44. She testified she was supposed to take Topamax and Fioricet but she cannot afford to fill her prescriptions and they had been out for months. R. 45. She added: "Recently, about twice in the last, I don't know, six or seven migraines that I've had, they had come to the point where I was seeing the white light and I passed out—well, thrown up and then passed out. That's never happened before, so I think they're getting progressively worse." R. 45.

Dunn suffers from persistent right shoulder and upper extremity pain. R. 42-44. She stated that an EMG showed carpal tunnel and bursitis in her right shoulder. R. 38. She has not found anything to help alleviate this pain. R. 43.

Finally, Dunn suffers from depression. R. 39. Dunn testified that she did not have a desire to do things anymore. R. 41. Her depression affects her work and causes her to have outbursts at customers. R. 39-40. She has had one complaint made against her, and it was for "swearing at a customer and kicking him out of the store." R. 40. She also has some difficulty with

14

concentration and completing tasks, and experiences some nervousness around people. Id.; R. 44.

At the time of the ALJ hearing, the only medication Dunn was taking was Celexa for depression. R. 39-40. She testified that her depression was relieved by Celexa. Id. Plaintiff has prescriptions for other medications, but was only taking Celexa at the time of the ALJ hearing due to inability to afford the other prescriptions. Id. Dunn testified these additional prescriptions are for Fioricet (for migraines), Atvian (for anxiety), Ultram (for pain), and Ritalin (for improving concentration). R. 39-40, 45.

### B. The Vocational Expert

The ALJ asked the vocational expert (VE), Albert J. Sabella, to consider a hypothetical individual of Plaintiff's age, education, and work experience with the following exertional limitations: she is limited to lifting and carrying twenty pounds occasionally, but ten pounds frequently; she could sit six hours in an eight-hour workday, and stand and walk six hours in an eight-hour workday; she would have only occasional use of the right dominant upper extremity; she could only occasionally use the right dominant upper extremity to reach at or above shoulder level; she could frequently climb ramps and stairs, but could never climb ladders, ropes, or scaffolds; and she could frequently balance, stop, kneel, and crouch, but could

only occasionally crawl. R. 48-49. The ALJ further stated that this hypothetical individual would have to avoid concentrated exposure to extreme cold, hazardous machinery, and heights. R. 49. Finally, the VE was asked to consider that this hypothetical individual would be limited to maintaining attention, concentration, persistence, and pace sufficient to carry out simple, routine, and familiar tasks to two-hour periods with normal work breaks; would be limited to occasional superficial interaction with coworkers; and, would be unable to interact appropriately with the public. Id.

The VE testified that such an individual could perform medical-equipment assembly work, but not data-entry work R. 49-50. The VE testified that such an individual could also perform the requirements of such representative occupations as an assembler of electrical accessories or inspector of plastic products. R. 50. The VE additionally noted significant numbers of these jobs in Rhode Island and nationally. Id. The VE concluded that the hypothetical "essentially describes work at a light level, unskilled, working with things and objects, manufacturing types of work." Id.

The ALJ then asked the VE to consider if the same hypothetical individual were unable to maintain attention and concentration to carry out simple tasks on a routine, consistent basis; unable to interact appropriately with others in the

workplace; and unable to tolerate customary work pressure found in simple work, whether these limitations would "rule out all full-time competitive employment." R. 50. The VE stated that this hypothetical claimant would be unemployable. Id.

## V.   **The Decision of the Administrative Law Judge**

At step one, the ALJ found that Dunn had "not engaged in substantial gainful activity since February 1, 2012, the alleged onset date." R. 15. At step two, the ALJ found that Dunn had severe impairments of chronic right shoulder pain, affective disorder, and anxiety disorder. R. 16. However, the ALJ concluded that Plaintiff's migraines were not a severe impairment. R. 16. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.; see 20 C.F.R. § 404.1520.

At step four, the ALJ found that Plaintiff retained the Residual Functional Capacity (RFC) for a reduced range of the light exertional level, as long as Plaintiff does not have to work closely with others nor interact with the general public. R. 17-23. Specifically, the ALJ found the following non-exertional limitations:

> [Dunn] has the residual functional capacity to perform
> light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except that she can occasionally use her
> right (dominant) upper extremity to operate hand
> controls and to reach at or above shoulder level. She

can frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; and frequently bend, stoop, and crouch. She can only occasionally crawl. She must avoid concentrated exposure to extreme cold, hazardous machinery, and heights. The claimant can maintain attention, concentration, persistence and pace sufficient to carry out simple, routine, and familiar tasks in two-hour periods with normal work breaks. She can maintain occasional, superficial interaction with coworkers. She cannot interact with the general public.

R. 17. The ALJ concluded that "the medical evidence of record supports a finding that the claimant remains able to perform essentially simple work with no public contact at a reduced range of the light exertional level." R. 23.

The ALJ pointed out that during "the alleged period of disability, [Plaintiff] was able to work on a near-full time basis as a cashier, an occupation that requires frequent use of her arms." R. 19. Based on this RFC, the ALJ found that Dunn was capable of performing past relevant work of a small parts assembler. Id., see R. 36. However, the ALJ did not take into account claimant's migraines in the RFC analysis.

The ALJ added a discussion of step five as an alternate basis of his decision: "In the alterative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform." R. 24. Based on the vocational expert's

testimony, he found that she could be an assembler of electrical accessories and inspector of plastic products. R. 24-25. Accordingly, the ALJ found Plaintiff was not under a disability as defined by the Social Security Act, and, thus, not disabled. R. 25.

## VI. **Procedural History**

The Social Security Administration (SSA) determined that Dunn was not disabled, denying Dunn's application for disability benefits on November 20, 2012. R. 53-61, 97. Following a written request for reconsideration made by Dunn on January 2, 2013, the SSA reconsidered Dunn's application. R. 74-84, 103-04. On August 23, 2013, the SSA again determined that Dunn was not disabled and denied Dunn's claim, confirming the previous determination. Id.

Plaintiff then sought review of the decision by an ALJ on October 22, 2013. R. 107-13. The administrative hearing was held on April 30, 2014, in Providence, Rhode Island, in front of ALJ Jason Mastrangelo. R. 27. On May 13, 2014, the ALJ issued his unfavorable decision. R. 10-25. On July 20, 2015, the Appeals Council denied Dunn's request for review of the ALJ's decision. R. 1-4, 9. Thus, the ALJ's decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 106 (2000).

**DISCUSSION**

I.     **Standard of Review**

This Court may only set aside the decision of an ALJ if the
decision resulted from legal error, or if the ALJ's factual
findings were not supported by substantial evidence. <u>Nguyen v.</u>
<u>Charter</u>, 172 F.3d 31, 35 (1st Cir. 1999). Thus, this Court does
not make <u>de novo</u> determinations. <u>Lizotte v. Sec'y of Health &</u>
<u>Human Servs.</u>, 654 F.2d 127, 128 (1st Cir. 1981); <u>White v.</u>
<u>Astrue</u>, No. 10-10021, 2011 WL 736805, at *5 (D. Mass. Feb. 23,
2011).

Substantial evidence means such "relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 564-65 (1988);
<u>Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban</u>
<u>Dev.</u>, 620 F.3d 62, 66 (1st Cir. 2010). This Court must uphold
the ALJ's determinations as long as they are supported by
substantial evidence, even if the record evidence could support
a different conclusion. <u>Rodriguez Pagan v. Sec'y of Health &</u>
<u>Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987); <u>Lizotte</u>, 654 F.2d
at 128. "The ALJ's findings of fact are conclusive when
supported by substantial evidence." <u>Nguyen,</u> 172 F.3d at 35. In
determining the quality of the evidence, the Court will examine
the record as a whole. <u>Rohrberg v. Apfel</u>, 26 F. Supp. 2d 303,
306 (D. Mass. 1998).

## II.  __Statutory and Regulatory Framework__

Under the Social Security Act, a claimant seeking benefits must prove they are disabled. 42 U.S.C. § 423(d). This means a claimant must prove they do not have the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a person must have a "severe impairment[] that makes [them] unable to do . . . past relevant work . . . or any other substantial gainful work that exists in the national economy." 20 C.F.R. § 416.905(a). An impairment can only be disabling if it "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Secretary of Health and Human Services has established a five-step sequential evaluation process for the ALJ to employ to determine whether a person is disabled. 20 C.F.R. § 404.1520. The determination may be concluded at any step along the process. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001); 20 C.F.R. § 404.1520 ("If we can find that you are disabled or not disabled at a step, we can make our determination or decision and we do not go on to the next step.").

First, if the claimant is currently engaged in substantial gainful work activity, then the claimant is automatically considered not disabled, and the application for disability benefits is denied. Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); 20 C.F.R. § 404.1520. Second, if the claimant does not have a severe impairment or severe combination of impairments, the disability claim is denied. Bowen v. Yuckert, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1520. If a condition is severe, the analysis proceeds to the third step: determining whether a severe impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe that they preclude substantial, gainful activity. Bowen, 482 U.S. at 141; Seavey, 276 F.3d at 5; 20 C.F.R. §§ 404.1520, 416.920. If the impairment meets one of these listed impairments, the claimant is presumed to be disabled. Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6 (1st Cir. 1982); 20 C.F.R. § 404.1520. If the impairment is not one of or the equivalent to one of the listed impairments, the evaluation proceeds, and the ALJ must determine the claimant's RFC—the most a claimant can do despite their limitations—based on relevant medical and case record evidence. 20 C.F.R. §§ 404.1520, 404.1545.  At the fourth step, the ALJ determines whether the claimant's RFC prevents her from performing work she performed in the past. Seavey, 276 F.3d at 5; Goodermote, 690 F.2d at 6; 20 C.F.R. § 404.1520. If the

claimant cannot perform this work, the fifth and final step is to determine whether the claimant is able to perform other work in the national economy in view of the claimant's RFC, age, education, and work experience. Seavey, 276 F.3d at 5; 20 C.F.R. § 404.1520. If the claimant is unable to perform this other work, the application for benefits is granted. Seavey, 276 F.3d at 5; 20 C.F.R. §§ 404.1520, 416.920

In the first four steps, the claimant bears the burden of proof to show she is disabled. Freeman, 274 F.3d at 608; Rohrberg, 26 F. Supp. 2d at 306. At the fifth step, the burden shifts to the Commissioner. Goodermote, 690 F.2d at 7.

## III. **Analysis**

The key issue in this case is whether the Administrative Law Judge failed to properly consider Plaintiff's migraine headaches. Plaintiff challenges the ALJ's determination on two grounds. First, Plaintiff argues that the ALJ failed to apply a de minimis standard when determining the severity of Plaintiff's migraines in step two of the ALJ's evaluation process. Second, Plaintiff contends that the ALJ failed to consider Plaintiff's migraines as a non-severe impairment when rendering Plaintiff's RFC in step four of the evaluation process.

### A. ALJ's Determination That Migraines Were Not Severe at Step Two

Step two is a <u>de minimis</u> screening device of claims for benefits, where "a finding of 'non-severe' is only to be made where medical evidence establishes only a light abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ." <u>McDonald v. Sec'y of Health & Human Servs.</u>, 795 F.2d 1118, 1124-25 (1st Cir. 1986) (internal quotation marks and citation omitted). Thus, a claim may be denied at step two only if the claimant's impairments "do not have more than a minimal effect on the [claimant's] physical or mental abilities to perform basic work activities." <u>Munoz v. Sec'y of Health & Human Servs.</u>, 788 F.2d 822, 823 (1st Cir. 1986). "[G]reat care should be exercised in applying the not severe impairment concept." <u>Munoz</u>, 788 F.2d at 823 (citing SSR 85-28, 1983-1991 Soc. Sec. Rep. Serv. 390 (Jan. 1, 1985)).

In the second step of the analysis, the plaintiff bears the burden to show that a severe impairment, or severe combination of impairments, exists. <u>Freeman</u>, 274 F.3d at 608. The plaintiff must demonstrate through objective medical evidence, or other sources which can reasonably be accepted as consistent with the objective evidence, including treating or non-treating sources, that her condition meets the severity standard. 20 C.F.R.

§§ 404.1520, 404.1529. The claimant must show she has "an impairment or combination of impairments which significantly limits the abilities and aptitudes necessary to do most jobs." Bowen, 482 U.S. at 146 (internal quotation marks omitted) (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(b)). In reviewing the ALJ's determination of severity, this Court must affirm the ALJ's findings if they are supported by substantial evidence, even if the record evidence could support a different conclusion. Rodriguez Pagan, 819 F.2d at 3. "When a disability claim rests on severe pain that exceeds what can be established by objective medical findings but is consistent with a diagnosed medical condition, the ALJ must inquire into several factors." Carr v. Astrue, No. 09cv10502, 2010 WL 3895189, at *6 (D. Mass. Sept. 30, 2010) (citing 20 C.F.R. § 404.1529) (discussing analysis of a severe impairment at step two); see White, 2011 WL 736805, at *6-7 (applying 20 C.F.R. § 404.1529 to step two).

Here, the ALJ determined that Plaintiff's right shoulder pain, affective disorder, and anxiety disorder were severe "because they impose more than minimal limitations in the claimant's ability to perform basic work activities." R. 16. In determining that Plaintiff's migraines were not a severe impairment, the ALJ concluded that Plaintiff's "migraine headaches do not impose more than minimal functional limitations." Id. The ALJ explained:

In addition to the severe impairments identified above, at the hearing the claimant testified that she suffers from debilitating migraine headaches three or four times per week. She stated that her migraines can last for hours at time [sic]. The claimant also stated that she has experienced migraine headaches lasting up to sixty days at time [sic]. However, she acknowledged that she did not take time off of work because of these migraines because she was afraid to be out of work.

The medical evidence of record does contain subjective complaints of migraine headaches. In particular, the frequency of the claimant's symptomatic complaints has increased since she suffered a head injury in June 2012. However, a contemporary CT scan was negative and the claimant's neurological examinations were normal. Subsequent treatment records describe recurrent complaints of migraines including migraines lasting up to fifty-four days in a row. However, despite these reports, the claimant does not present to her treating physicians with active symptoms of migraine headaches. The claimant's neurological examinations remain normal with intact strength, sensation, gait, and reflexes. The claimant has reported that use of Floricet [sic] has relieved her migraines. Therefore, the undersigned concludes that the claimant's migraine headaches do not impose more than minimal functional limitations. They are not a severe impairment in this case.

Id. (internal citations omitted).

Migraine headaches, either on their own or in combination with other conditions, have been found to be severe impairments. See, e.g., Moon v. Colvin, 763 F. 3d 718, 721 (7th Cir. 2014); Strickland v. Barnhardt, 107 F. App'x 685, 688-89 (7th Cir. Aug. 19, 2004); Brown v. Astrue, No. 09-40211, 2011 WL 3421556, at *4 (D. Mass. Aug. 3, 2011); Carr, 2010 WL 3895189, at *4. In deciding whether migraines constitute a severe impairment, courts look to the frequency of the headaches, whether the

claimant was able to work, whether the headaches dissipated with treatment, and whether the claimant had to seek urgent care because of ongoing headache symptoms. See Andrade v. Colvin, No. 14-12153, 2015 WL 5749446, at *5-6 (D. Mass. Sept. 30, 2015) (upholding determination of migraines as non-severe where migraines were largely amenable to treatment and there was no indication of significant limitation of daily activities); Jorge v. Colvin, No. 14-cv-11179, 2015 WL 5210519, at *8-9 (D. Mass. Aug. 17, 2015) (upholding determination of migraines being non-severe where the plaintiff did not have ER visits or hospitalizations for migraines nor prescribed medication); Brown v. Astrue, No. 09-40211, 2011 WL 3421556, at *2, *4 (D. Mass. Aug. 3, 2011) (migraines found to be severe where migraine prompted an ER visit, despite radiological imaging being negative and treatment with medication); Carr, 2010 WL 3895189, at *2, *4 (ALJ found migraines to be severe where claimant only had three days in the previous month where she did not experience a migraine).

Here, Plaintiff emphasizes the Headaches Medical Source Statement completed by Dr. George, her treating physician, which indicated she had "moderate" intensity headaches. Although Dr. George is Plaintiff's treating physician, and treated her for migraines, the ALJ assigned "little weight" to Dr. George's opinion. R. 22. The ALJ further gave "substantial weight" to the

opinions of consulting state doctors Dr. Clifford Gordon and Dr. Youssef Georgy, though neither examined the claimant. R. 23.

Under 20 C.F.R. § 416.927(c)(1), the ALJ "generally" must give "more weight" to opinions from examining physicians than to sources who have not conducted an examination. "In order for evidence from the treating source to receive controlling weight," it must be 1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and 2) "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 416.927(c)(2)). If one of these elements is not met, a treating source's opinion is not given controlling weight, and the ALJ should determine the amount of weight to give the opinion by applying the following factors: (1) the examining relationship; (2) the length, nature, and frequency of the treatment relationship; (3) whether the opinion is supported, including by consulting sources; (4) consistency with the record as a whole; (5) the source's area of specialization; and, (6) any other relevant factors like the familiarity of the source with the case record. 20 C.F.R. § 416.927(c). Unless the treating source's opinion is given controlling weight, the ALJ must explain the weight to be given to the treating and non-treating sources. Id.

The medical record amply documents that Dunn suffered from migraines. She began treatment on January 13, 2012, and visited

a doctor at least ten times suffering from migraines. Dr. George, Dunn's primary care physician at the FCC, personally examined Dunn and noted symptoms of pain, nausea, and vomiting. He prescribed multiple medications including Imitrex, Fioricet, and Topamax. Because she lacked insurance, Dunn could not always afford the preventive medication Topamax. On the Headaches Medical Source Statement, Dr. George said he treated her for four years and that she suffered from "moderate" migraines that inhibited usual activity. R. 369. He reports that she experienced phonophobia, throbbing pain, inability to concentrate, mood changes, exhaustion, malaise, impaired sleep, and avoidance of activity. R. 369. He reported that the frequency of headaches was three to four per week, and that she could not perform basic work activities during her headaches but was capable of low stress work. He said she was likely to be "off task" 25% of the time while experiencing a migraine at work. He said that medication made her headaches better.

The report of the treating source was not contradicted by Dr. Wendy Schwartz, Ph.D., who conducted a consultative examination. Dr. Schwartz reported that claimant stated she had an eleven-year history of migraines, and that Plaintiff's prescriptions included Topamax and Fioricet. Dr. Schwartz diagnosed her with major depressive disorder; recurrent,

moderate panic disorder with agoraphobia; migraines; and, shoulder pain.

The ALJ did not give a clear explanation why he gave the treating physician's opinion so little weight. It is true that the treating source was a primary care physician, not a specialist, but the sources who said the migraines were not severe did not examine Dunn and did not explain how they came to that conclusion. There is no evidence they were specialists either. Indeed, one was a Doctor of Education.

The ALJ gave four reasons for discounting the treating physician's opinion. First, the ALJ pointed out that there was no objective evidence to support Dr. George's opinion, and specifically that a CT scan was negative and neurological exams were normal. However, the ALJ's reliance on the unremarkable findings of the CT scan and neurological exams is not justified. Because migraines are symptom-based, neuroimaging tests do not confirm a migraine diagnosis, but rather are used to exclude other causes of headaches (like a tumor). See Moon, 763 F. 3d at 721.[4] The government argues, "Critically, however, [P]laintiff does not point to any objective evidence supporting her

---

[4] See also Dagny Holle & Mark Oberman, The role of neuroimaging in the diagnosis of headache disorders, 6 Therapeutic Advances in Neurological Disorders 370 (2013) ("Usually, neuroimaging is not required in patients with episodic migraine who present with typical headache features . . . and normal neurological examination.").

allegations of severe migraine headaches." Docket No. 24 at 8-9.
The government does not explain what objective evidence would
prove up a migraine. Generally available literature suggests
that migraines are diagnosed based on clinically-reported
symptoms like nausea, aura, and vomiting—all of which existed
here. See Migraine, Stedman's Medical Dictionary 1118 (27th ed.
2000) (defining migraine as "[a] symptom complex occurring
periodically and characterized by pain in the head (usually
unilateral), vertigo, nausea and vomiting, photophobia, and
scintillating appearance of light").

Second, the ALJ stated that the claimant did not report to
her treating physician with active symptoms of migraine
headaches. However, that assertion is not supported by the
record. See, e.g., R. 269 (acute visit on June 12, 2012, where
Dunn reported she had been experiencing a headache for several
days, was nauseous and had vomited, and Imitrex wasn't working);
R. 263 (acute visit on July 25, 2012, for migraines medication,
where Dunn reported her current migraine pain intensity as eight
out of ten with pain "like getting stabbed" and deferred
discussions with treating physician as she could not concentrate
while having her migraine).

Third, the ALJ pointed out that medication like Fioricet
relieved her headaches. "If an impairment can be controlled by
treatment or medication, it cannot be considered disabling."

Martinez-Lopez v. Colvin, 54 F. Supp. 3d 122, 133 (D. Mass.
2014) (finding that because the plaintiff's arthritis could be
controlled with medication, the plaintiff did not establish that
the impairment interfered more than minimally with the
plaintiff's ability to perform work); see also Wildman v.
Astrue, 596 F.3d 959, 965 (8th Cir. 2010) (concluding that
flares of pain were precipitated by noncompliance with
prescribed diet and medications); 20 C.F.R. §§ 404.1530(b),
416.930(b) ("If you do not follow the prescribed treatment
without a good reason, we will not find you disabled."). Several
courts have held that migraines are not severe impairments if
prescription medications can manage the pain. See Andrade, 2015
WL 5749446, at *5-6 (upholding ALJ's determination of migraine
headaches not constituting a severe impairment because migraines
largely managed with prescription medicine and there was no
indication the headaches caused significant limitations in daily
activities); White, 2011 WL 736805, at *6-7 (upholding ALJ's
decision that headaches were not severe where the medical
records documenting migraines were limited, treating physician
did not give an opinion of the migraine severity, and medication
reduced migraine severity); Kanash v. Astrue, No. 06-11766, 2008
WL 794575, at *8 (D. Mass. March 25, 2008) (upholding ALJ's
determination that headaches were not severe where they were

controlled with medication and treating physician repeatedly stated the plaintiff could perform light work).

While the opinion of the treating physician supports the ALJ's determination that medication improves Dunn's migraine symptoms, the ALJ gave little weight to the treating physician's additional conclusions that her migraine symptoms were moderate and they inhibited, even if they did not preclude, work activity. Significantly, he ignored the medical records which showed the medication did not always work. R. 266, 269, 281, 284. Moreover, in light of her lack of insurance, claimant testified she could not always afford Topamax, the preventive medication. This testimony was reflected in the medical record. R. 340-41. Thus, Plaintiff was not someone who failed to take her prescriptions without good reason.

Finally, the ALJ has substantial evidence to support his finding that the claimant did not take time off from work due to the migraines. In his opinion, the ALJ emphasizes she was able to work near-full time as a cashier. At the hearing, Dunn explained she was afraid to take time off because she needed the money. The treating physician stated she needed breaks from work when she had migraines, and while experiencing migraines was generally precluded from performing basic work activities. R. 370-71.

Understandably, migraines pose a difficult challenge because the diagnosis is based largely on symptoms reported by a claimant, not objective evidence. However, this Court finds the ALJ's decision to give little weight to the treating physician's opinion that the impairment was significant was in error in light of the length, nature, and frequency of the treating relationship, the consistency of his opinion with the medical records, the factual errors underpinning the ALJ's analysis, and the lack of analysis of the non-examining physicians.

## B. ALJ's Determination Not to Include Impairments from Migraines in Step Four

Plaintiff also argues that, even if the migraines were properly considered non-severe, the ALJ erred by not considering Plaintiff's migraines in rendering her RFC at step four, as is required by Social Security Ruling 96-8p. The defendant contends that even if Plaintiff's migraines were considered severe, any error would be harmless as the ALJ considered all of Plaintiff's impairments and their functional effects in rendering the RFC.

Social Security Ruling 96-8p states, "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or

34

restrictions due to other impairments—be critical to the outcome of a claim." SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." Id. Further, the RFC "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." Id. at *7.

Further, SSA regulations and case law mandate that the ALJ consider the combined effect of all of claimant's impairments at each step of the sequential analysis. McDonald, 795 F.2d at 1124; 20 C.F.R. § 404.1520(g). The RFC must "contain a thorough discussion and analysis of the objective medical and other evidence[.]" SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

Here, in the analysis determining Dunn's RFC, the ALJ did not expressly discuss Dunn's migraine symptoms. See R. 17-23. In making the RFC finding, the ALJ stated boilerplate that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." R. 17. However, the discussion regarding Plaintiff's RFC only addresses Plaintiff's right arm pain, depression, anxiety, and cognitive functioning.

R. 18-23. The ALJ does not discuss Dunn's subjective complaints
of pain and other symptoms from the migraines. R. 18; Avery v.
Sec'y of Health & Human Servs., 797 F.2d 19, 22, 28-29 (1st Cir.
1986) (providing factors that must be considered when evaluating
credibility of subjective complaints of pain and noting that
"denial decisions must state why subjective testimony of
limitation of function because of pain is not supported by the
evidence"). There is no indication the ALJ considered the
cumulative effect of Plaintiff's severe and non-severe
impairments, including the migraines, and thus the ALJ decision
was not in accordance with SSR 96-8p. See Andrade, 2015 WL
5947446, at *6 (holding even where the ALJ found the migraines
were non-severe at step 2, the ALJ had the "obligation" to
consider the symptoms of the migraine headaches in connection
with the assessment of the plaintiff's RFC). The case is
remanded for analysis of the evidence related to Plaintiff's
migraine headaches at both steps two and four.

### ORDER

For the reasons stated above, Plaintiff's motion to remand
(Docket No. 19) is **ALLOWED** and Defendant's motion to affirm
(Docket No. 23) is **DENIED**.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge